United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE URENDA,<br>　　　　Petitioner,<br>　　v.<br>S. HATTON,<br>　　　　Respondent. | Case No. 16-cv-02650-WHO (PR)<br><br>**ORDER OF DISMISSAL**<br><br>Dkt. No. 13 |

## INTRODUCTION

Petitioner Jose Urenda seeks federal habeas corpus relief under 28 U.S.C. § 2254 from the state's denial of parole in 2014. He claims that the California Board of Parole Hearings ("Board") violated his Fifth, Sixth, and Fourteenth Amendment (due process and equal protection) rights when it used confidential information to deny him parole. Because he had an opportunity to be heard during the hearing and the Board Commissioners explained the basis of their denial of his parole, he received all of the process that the United States Supreme Court has held that he is due. *Swarthout v. Cooke*, 131 S. Ct. 859, 862 (2011); *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 16 (1979). Accordingly, as urged by respondent in his motion to dismiss, the petition will be dismissed.

## BACKGROUND

Jose Urenda is incarcerated for second degree murder. (Pet. at 2.) The date of the offense was September 19, 1992. (Mot. to Dismiss, Dkt. No. 13-1 at 52.) Urenda was 19 years old. (*Id.*, Dkt. No. 13-3 at 18.) His first parole hearing occurred on April 10, 2014.

(*Id.*, Dkt. No. 13-1 at 4.) The Commissioners questioned Urenda about the underlying offense, his family background and his efforts at rehabilitation while in prison. He and his counsel addressed the Commissioners in support of parole. (*Id.*, Dkt. No. 13-3 at 9-14.) After a hearing that lasted more than two hours, the Commissioners retired to deliberate and ultimately returned and explained in detail why they were denying parole. (*Id.*, Dkt. No. 13-3 at 15-29.)

In the course of their explanation, the Commissioners referred to their review of and reliance upon "the confidential portion of the Central File." (*Id.*, Dkt. No. 13-3 at 15-16.) This confidential information was not shown to Urenda or his counsel. (Pet. at 15.) His inability to see it and respond to whatever it contained is the basis of this writ.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

### I. Due Process[1]

In the parole context, the due process protections owed to a prisoner are minimal: an opportunity to be heard and a statement of reasons parole was denied. The Constitution does not require more because the parole decision is highly discretionary and subjective. The "parole-release decision . . . depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release." *Greenholtz*, 442 U.S. at 9-10.

Because the parole decision is largely discretionary, the elaborate procedural safeguards afforded at trial, the "full panoply of due process required to convict and confine," are inapplicable. *Id.* at 14. A parole hearing is not, then, "a traditional adversary hearing." *Id.* at 4. It is not a determination of guilt or a testing of evidence. As such, a prisoner is not allowed "to hear adverse testimony or to cross-examine witnesses who present such evidence." *Id.* at 5.

---

[1] Urenda appears to allege that his due process rights under the Fifth and the Fourteenth Amendments were violated. (Pet. at 5.) Urenda makes no allegations that distinguish one due process claim from another. The due process component of the Fifth Amendment applies only to the federal government, not to state or local ones. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001). Accordingly, I will treat this as a claim under the Fourteenth Amendment.

3

Because the due process protections are limited, the Constitution does not require the Board "to specify the particular 'evidence' in the inmate's file . . . on which it rests the discretionary determination." *Greenholtz*, 442 U.S. at 15.[2] Nor does due process require an inquiry into whether California's procedures produced the result the evidence required. *Cooke*, 131 S. Ct. at 862.

In sum, a prisoner receives constitutionally adequate process when "he was allowed an opportunity to be heard and was provided a statement of the reasons" parole was denied. *Cooke*, 131 S. Ct. at 862. "The Constitution does not require more." *Greenholtz*, 442 U.S. at 16.

The record shows that Urenda received at least the required amount of process. *Greenholtz* makes clear that the Board need not specify or share the evidence it has used to make its determination, and so Urenda's claims regarding the Board's use of confidential information lack merit.[3] Due process does not require that the state's procedures produce the result the evidence required, nor that the Board disclose what information on which it relied. Rather, due process requires *only* that Urenda had an opportunity to be heard and that he was provided with a statement of reasons parole was denied. He received the opportunity to be heard during a hearing that lasted more than two hours and received a statement of the reasons parole was denied that lasted almost twenty minutes. The Court's due process inquiry ends there.

The state court's rejection of the due process claim was reasonable and is entitled to AEDPA deference. Urenda's due process claim is DENIED.

---

[2] "To require the parole authority to provide a summary of the evidence would tend to convert the process into an adversary proceeding and to equate the Board's parole-release determination with a guilt determination . . . the parole-release decision is, as we noted earlier, essentially an experienced prediction based on a host of variables." *Greenholtz*, 442 U.S. at 15-16.

[3] Urenda also alleges the Board did not follow the requirements of the parole statute, which, according to petitioner, establishes a presumption in favor of parole. However, violations of state law are not remediable on federal habeas review, even if state law were erroneously applied or interpreted. *Cooke*, 131 S. Ct. at 861-62.

4

## II. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Urenda's equal protection claim also is based on the Commissioners' use of confidential information.

Urenda attempts to link (1) the CDCR's use of confidential information when they make housing decisions for gang members to (2) the Board's use of confidential information to deny him parole. (Pet. at 13-15.) The argument unfolds as follows. The CDCR has discontinued the use of confidential information in making housing decisions for gang members. The Board, however, continues to use confidential information in making parole decisions. Urenda contends that it violates the Equal Protection Clause to reject the use of confidential information against one class of inmates, yet continue to use it against another.

Habeas relief is not warranted here. The Equal Protection Clause protects similarly situated classes from suffering disparate treatment. Neither element has been established by Urenda's petition. First, the classes, if that is what the two groups are, are not similar. A person being considered for parole is not similarly situated to a validated prison gang member undergoing a housing determination. The liberty interests at play in each situation implicate different laws and legal standards. Second, because these two types of prisoners are not similarly situated, the law does not require that each should receive similar treatment. One seeks release from custody, the other seeks less restrictive prison housing.

The state court's rejection of the equal protection claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

## III. Sixth Amendment

Urenda claims the Board violated his Sixth Amendment right to the effective assistance of counsel when it would not let his attorney review the confidential

5

information. (Pet. at 15.) The Sixth Amendment right to counsel applies only in criminal prosecutions. U.S. Const. amend. VI. Parole hearings are not criminal prosecutions. There is no basis for a Sixth Amendment claim.

The state court's rejection of the Sixth Amendment claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

## CONCLUSION

Respondent's motion to dismiss (Dkt. No. 13) is GRANTED. The petition is DISMISSED. Leave to amend will not be granted because the petition rests on the Board's use of the confidential information in the parole hearing, which as explained above does not provide a plausible basis for a claim for relief.

A certificate of appealability will not issue. Urenda has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). He may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

The Clerk shall terminate Dkt. No. 13, enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

**Dated:** May 30, 2017

WILLIAM H. ORRICK
United States District Judge